**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case Number:22-cr-037(CRC)** |
| | : | |
| | : | |
| **IAN MICHAEL FRIED,** | : | |
| **Defendant.** | : | |

**UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum in response to the defendant's Sentencing Memorandum. For the reasons stated in its Sentencing Memorandum, and for the reasons outlined below, the government is seeking a sentence of 151 months imprisonment, to be followed by 120 months of supervised release. Additionally, the government is seeking restitution in the amount of $22,000 for the minor victims in this case, as well as the forfeiture of the items used by this defendant to commit the offenses for which he stands convicted.

I.   **The Cases Cited by the Defendant Illustrate why a Guidelines Sentence is Necessary**

In an attempt to argue for what amounts to an illegal sentence, the defendant cites a variety of cases in which defendants with a demonstrated sexual interest in children received sentences substantially lower than the Guidelines sentence the government is recommending in the instant matter. *See* Defendant's Position with Respect to Sentencing (Defendant's Memo) at pages 3-11. In terms of the sentences imposed for these other offenders who, like the defendant, demonstrated a willingness to sexually abuse and exploit children, it is important to note that in five of the six cases cited by defense, the defendants were convicted of an entirely different offense: Possession of Child Pornography. *Id.* As such, these

1

offenders were not subject to a five-year mandatory minimum and, as such, faced a far

different sentencing landscape than the defendant does in the present case.  However, a

review of these cases is illuminating for the Court when fashioning an appropriate sentence

for Defendant Fried, because they show that offenders who commit offenses against the most

vulnerable members of our society have great difficult in complying with the terms and

conditions of supervised release imposed by the Court.  For example, in *United States v.*

*Pamela Wilson*, the defendant was sentenced to a term of incarceration on April 12, 2017. *See*

*United States v. Pamela Wilson* (17-cr-11)(D.D.C.).  By May 10, 2019, the Court had already

scheduled a hearing due to the defendant's violations of the terms of supervised release. *Id.*

A second petition alleging additional violations of supervised release was filed on August 6,

2019.  *Id.*  Following a hearing on the violations on October 25, 2019, the Court revoked the

defendant's supervised release, and imposed a thirty-month sentence.  *Id.*  In April 30, 2020,

additional violations by Defendant Wilson of the terms of her supervised release were

alleged, and the defendant conceded to four different violations of supervised release on

October 20, 2020.  *Id.*

Similarly, in the case of *United States v. Rasheed Richburg*, a defendant convicted

and sentenced for a child pornography offense on March 5, 2016, violated the terms of his

supervised release and a summons for a Hearing on the Violations was issued on September

1, 2022.  *See United States v. Rasheed Richburg* (15-cr-15)(D.D.C)(Dkt. No. 29).

Disturbingly, after the summons was issued, the defendant failed to appear in Court for the

Hearing on the Violations on November 28, 2022 and December 14, 2022.  *Id.*  Presumably,

this offender is still at large, as the next date for the hearing on the revocation of supervised

release is March 28, 2023.  Likewise, in the case of *United States v. Donald Aiken Essex,* the

2

defendant was sentenced after a pleading guilty to the Possession of Child Pornography on March 24, 2006. *See United States v. Donald Alan Essex* (18-cr-104)(D.D.C). By August of 2018, the Court had already issued a summons to address the Probation Department's petition regarding the defendant's violations of the terms of his supervised release. *Id.* at Dkt. No. 36. At a Hearing on the Violations, the defendant conceded three of the violations and was remanded on September 13, 2018. *Id.* He was subsequently released, and his supervised release was revoked on January 19, 2019. *Id.* A new term of supervised release, 48 months, was imposed.

While these cases may not serve as useful comparisons for this Court in fashioning an appropriate sentence for this defendant given that the offense of conviction was entirely different, and therefore no mandatory minimum sentence was applicable, they do illustrate the fact that offenders with a demonstrated sexual interest in children, like the defendant, often repeatedly fail to comply with the conditions of supervised release rightfully imposed at the time of Sentencing. These conditions of supervised release are designed to protect the public from future crimes perpetrated against our most vulnerable members of society, by putting various reporting requirements and monitoring mechanisms in place. The cases cited by defense show that these offenders frequently and willingly flout and evade these protective measures, eliminating the assurances and protection that supervised release is designed to provide for the Courts and to the public. With this in mind, the Court should have grave concerns about this defendant's ability to comply with any and all terms of supervised release that this Court may impose upon the completion of his sentence of incarceration. It is the government's position that this offender's long-standing course of criminal conduct of accessing, collecting, searching and distributing child pornography for nearly thirty years

significantly heightens this concern.  As such, a lengthier sentence as contemplated by the

Guidelines is necessary for all the reasons cited in the government's Sentencing

Memorandum, including the need to protect the public from future crimes by this defendant.

II.    **The Defendant's Attack on the Guidelines Ignores the Sentencing Commissions' Recent Report**

The defendant attempts to assert that his request for a sentence of one year, which given

the amount of time this offender has been incarcerated would essentially amount to Time Served,

is appropriate by attacking the relevant Guideline, §2G2.2 *See* Defendant's Memo at pages 15-

18.  Even if such criticism is fair, what does not naturally follow is that the Guidelines range

should be lower than it currently is.  What the data and research show is that these types of

offenders' conduct is getting worse over time.  The United States Sentencing Commission

conducted a hearing on the child pornography sentencing guidelines on February 15, 2012.

Department of Justice (DOJ) employees James Fottrell and Steve DeBrota, and former DOJ

employee Francey Hakes provided the following testimony regarding child pornography

offenses:

> In the last ten years, we have seen a sharp increase in the severity and
> depravity of child pornography offenses, fueled in large part by swiftly
> advancing technological changes which permit offenders to easily store
> large numbers of images of child sexual abuse, to create safe havens online
> where they can communicate and bond with other individuals who
> encourage and promote the sexual exploitation of children, and to utilize
> sophisticated methods to evade detection by law enforcement. This increase
> is reflected in the changes in the content of the images over time, as infants
> and toddlers are now regularly victimized by child pornography offenders
> and the victims are forced into more brutal and degrading sexual activity.

*See* http://www.justice.gov/criminal/ceos/CT/downloads/Testimony-Sentencing-
Commission-Fottrell.pdf.

In the present case, this defendant accessed, downloaded and possessed images involving the sexual abuse of infants and toddlers. His vast collection of child sexual abuse material included images depicting the sadistic and masochistic abuse of defenseless children. As detailed in the government's Sentencing Memorandum, this offender spent decades collecting and storing this material, and he did so using a variety of devices. Such behavior does not argue in favor of a lower Guidelines range.

It should also be noted that, while the defendant complains about the current enhancements applicable, the defendant does not receive any "points" for his behavior and conduct that the Sentencing Commission deems to be "aggravating factors." *See* Federal Sentencing of Child Pornography Non-Production Offenses (https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses)(noting additional factors that a Court can consider at sentencing when determining the level of danger a particular offender poses to the community: (1) the content of the offender's child pornography collection and nature of the offender's collecting behavior; (2) the offender's degree of involvement with other offenders, particularly in an internet community devoted to child pornography and child sexual exploitation; and (3) the offender's engagement in sexually abusive or exploitative conduct in addition to the child pornography offense). This defendant did not receive any enhancements for engaging in this criminal conduct for decades, nor did her receive any additional "points" for actively engaging in an online community. As argued in the government's sentencing memo, in addition to distributing images and videos depicting the sexual exploitation and abuse of vulnerable children, when chatting with other like-minded offenders, this defendant actively encouraged individuals to sexually abuse children and to record it for his own sexual gratification. Furthermore, no "points" nor enhancements apply for this offender's incessant attempts, both in his professional and his

personal life, to gain "legitimate" access to children, most disturbingly to children in the very same age range as those that it is clear that he is the most sexually attracted to.

As such, it is clear that this defendant engaged in even worse conduct than what Guideline §2G2.2 considers and attempts to adequately address. Arguably, a sentence even higher than what the current Guidelines contemplate would be a just sentence that is reasonable, but no greater than necessary, to achieve the multiple purposes of sentencing. If the Court is inclined to "discount" or disregard certain enhancements based on the defendant's argument, the government requests that the Court also consider these aggravating factors that are not accounted for by the Guideline when fashioning a sentence for this defendant.

### III.    This Defendant Lacks the Characteristics that Justify a Departure Pursuant to § 5K2.22

The defendant argues that a departure from the correctly calculated Guidelines range is appropriate given the defendant's age, health condition, and the existence of COVID. *See* Defendant's Memo at pages 18-20. Here, the defendant is in his mid-fifties, is obese, and has high blood pressure. *Id.* at 19. Neither his age, his weight, nor the fact that he has high blood pressure are conditions that are present to such an unusual degree as to distinguish this case from the typical cases covered by the Guidelines. *See* U.S.S.G. § 5H1.1. It is not unusual for courts to sentence older defendants, who lack a criminal record, in these types of offenses. Furthermore, a weight problem is something that not only defendants, but most adults, struggle with. Similarly, high blood pressure is also a common health condition that can be controlled by medication. None of these conditions, either singularly or in combination, justify a departure from the applicable Guidelines.

The case of *United States v. John Green* serves as useful case for this Court to consider when determining such a departure or variance is warrant. *See United States v. John Green* (22-

cr-006)(CKK).  Defendant Green was convicted of Accessing Child Pornography with Intent to View based upon conduct occurring over a two-year time period when he was between 77 and 79 years old.  *Id.* at Dkt. No. 1; *see also* https://www.wusa9.com/article/news/local/dc/81-year-old-dc-man-sentenced-54-months-prison-child-pornography/65-8fd72744-9046-4218-acb8-6f1e8131300a.  Defendant Green, 81 years old at the time of sentencing, had various health issues that were far more significant than the ones facing the defendant in the instant matter. While the Court determined that Defendant Green's significantly advanced age and health condition justified a variance from the applicable Guidelines, the Court imposed a sentence of 54 months imprisonment, to be followed by 60 months of supervised release.  *Id.*  In Defendant Green's case, his age in combination with his other characteristics were present to such an unusual degree that his case was distinguishable from the typical case covered by the Guidelines. *See* U.S.S.G. § 5H1.1.  That is simply not the case when considering the defendant who stands before this Court for sentencing.  As such, a sentence contemplated by the Guidelines is appropriate.

As for the defendant's arguments regarding COVID, this global pandemic has been something that not only detained defendants but the population at large has had to deal with for nearly 3 years.  In contrast to 2020, much more is known about this virus and the way in which it is transmitted, and methods to prevent and slow the transmission have been effectively implemented.  Most importantly, vaccines have been administered and have been shown to be highly successful in preventing severe illness.  The defendant has been vaccinated against COVID 19.  *See* Defendant's Memo at page 18.  Therefore, it's clear that the existence of COVID is not a reason to depart from the applicable Guidelines range when fashioning a sentence for this defendant.

## IV.    The Defendant's 8th Amendment Argument Lacks Merit

The Defendant attempts to assert that the mandatory minimum sentence applicable to this case violates the defendant's 8th Amendment rights.  *See* Defendant's Memo at page 20.  The defendant's arguments are against the weight of authority on this issue. In the case of *United States v. Ball*, the defendant was convicted of violating 18 U.S.C. §2252(a)(2) and faced the same applicable guidelines range as the defendant does in this case.  *See United States v. Ball*, 530 App'x. 505 (6th Cir. 2013).  The defendant appealed on 8th Amendment grounds, a claim that was promptly rejected.  *Id.*  In the case of *United States v. Green*, the defendant received a sentence of 324 months in jail for transporting child pornography.  *See United States v. Green*, 458 F. App'x 863 (11th Cir. 2012).   In rejecting a challenge that the length of the sentence violated the defendant's 8th Amendment protections, the Court noted that challenges based on the length of imprisonment have rarely been found to violate the 8th Amendment.  *Id.*  Other courts have similarly held that mandatory minimum jail sentences for child pornography offenses do not violate the 8th Amendment.  *See United States v. Reingold*, 731 F.3d 204 (2nd 2013); *United States v. Jamerson*, 536 Fed. App'x 606 (6th 2013); *United States v. Walker*, 917 F.3d 1004 (8th Cir. 2019); *United States v. Gonzalez*, 731 Fed. App'x 836 (11th Cir. 2018).[1]

---

[1] The defendant attempts to use the case of *United States v. Hashime* to support his position that a sentence of greater than one year somehow violates the 8th Amendment.  *See* Defendant's Memo at page 21.  What defense counsel fails to appreciate is that Defendant Hashime underscores the importance of imposing a Guidelines sentence in these types of cases, due to the likelihood that these offenders simply cannot or will not comply with the terms of supervised release. Hashime was sentenced to 15 years imprisonment, following a conviction for the Sexual Exploitation of a Child; however, his conviction was overturned on appeal and the defendant was resentenced to a term of 60 months on a lesser charge.  *See United States v. Faisal Hashime*, 12-cr-329(EDVA). Hashime violated the terms of his supervised release in 2016, 2017, 2018.  After a series of violations, he was remanded and sentenced to nine months on January 25, 2018.  *Id.*  He violated the terms of his supervised release again in December of 2019, and received a nine month sentence on January 31, 2020.

### V. Addressing Risk Assessment and Dr. Boyd's Report

The government takes issue with any suggestion that it was bound to agree with any conclusions reached by Dr. Boyd in the report she prepared at the defense counsel's request. *See* Defendant's Response at page 9. According to the defendant, Dr. Boyd administered the CASIC, which as the government points out would have given the defendant a higher "score" than the one test Dr. Boyd indicated that she administered in her initial report. *See Id.*; see also Boyd's Report (failing to mention that the CASIC was administered and/or factored into her conclusions). As stated in the government's Sentencing Memorandum, the government credits Dr. Boyd's statements that this is an offender who consistently and deliberately sought out jobs that would give him access to children. *See* Boyd's Report at page 3. Additionally, the government does not dispute that the defendant has been committing child pornography offenses for decades, and that his continuing attempt to justify and rationalize this abhorrent and exploitative behavior is concerning. *Id.* at page 4. Likewise, there is no dispute that he has a sexual interest in children which, the government submits, makes him a danger to the most vulnerable members of our community. *Id.* at page 6.

What the government does take issue with is the conclusion that the defendant poses a "relatively low risk" to reoffend given the fact that the language of the report clearly indicates that the research is not yet sufficient to allow evaluators, like Dr. Boyd, to opine on individual actual risk assessment. *Id.* at pages 7 -8. According to Dr. Boyd, researchers "have not yet developed actuarial instruments for individuals convicted of internet-related offenses." *Id.* at page 7. For the one test that she chose to administer to the defendant designed to ascertain risk to reoffend, the CPORT, Dr. Boyd notes that "the authors warn against the application of the recidivism probabilities without further cross-validation." *Id.*

(noting that researchers are too early ]in the validation process to provide numerical statistical predication of reoffense rates that can be applied to individual examinees.) Based on this limited validation research, the recidivism rates that the authors of the CPORT have reported are drastically different than the rates the Sentencing Commission observed in its report in June of 2021.  *See* https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses  at page 7 (finding that after tracking over 1,000 child pornography offenders who had been released, 27.6 perfect were rearrested within three years).  The government is not challenging Dr. Boyd's qualifications, nor is the government asserting that there is false information in Dr. Boyd's report.  However, based on the information contained therein, at the present time the available tests measuring an individual defendant's risk to reoffend, and the state of the validation research, do not support the conclusion that this offender poses a "low risk to reoffend."  To the contrary: The information available to the Court suggests that this offender has been, and will remain, a danger to the community and that his risk to either reoffend or to fail to comply with the conditions of release that this Court may impose is uncomfortably high.  As such, a sentence as contemplated by the Guidelines is appropriate.

## VI.    Conclusion

The Government submits that a sentence of 151 months, to be followed by ten years supervised release, is a reasonable sentence in this case and is "sufficient, but not greater than necessary to comply with the purposes" of sentencing.  18 U.S.C. § 3553(a).  The government

renews its request for $22,00 in restitution for the victims, and that the defendant forfeit items that were used to commit the offenses for which he stands convicted.

Dated:   January 12, 2023                    Respectfully submitted,

                                             MATTEW D. GRAVES
                                             UNITED STATES ATTORNEY

                                             _/s/_  *Amy E. Larson*____
                                             Amy E. Larson, N.Y. Bar Number 4108221
                                             Assistant United States Attorney
                                             601 D Street, N.W.
                                             Washington, D.C. 20530
                                             Telephone: (202) 252-7863
                                             Email: Amy.Larson2@usdoj.gov